IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIK J. GUMMINGER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 22-4927 |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA BOARD OF | : | |
| PROBATION/PAROLE and C/O | : | |
| KELLOM, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                        February 28, 2023

The *pro se* plaintiff has filed an application for leave to proceed *in forma pauperis* and a complaint in which he alleges that (1) a state parole board violated his Fourteenth Amendment due process rights when it concluded in 2016 that he had violated the conditions of his parole and recommitted him for an 18-month period based on criminal charges that the government *nolle prossed* in June 2015 and (2) a correctional officer used excessive force against him in violation of the Eighth Amendment in 2018, which was during the period he was unlawfully incarcerated due to the parole violation. The plaintiff brings these claims pursuant to 42 U.S.C. § 1983.

After screening the *in forma pauperis* application and the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), the court will grant the plaintiff leave to proceed *in forma pauperis* but will dismiss the complaint with prejudice for the failure to state a claim. The plaintiff has failed to allege a plausible claim for a due process violation because he has not alleged that he availed himself of the process available to him to challenge the parole board's decision to recommit him for violating his parole, or that the process available to him was somehow inadequate. He has also failed to allege a plausible claim for excessive force against the correctional officer because he

does not assert any facts as to what force was used against him, the circumstances under which it was used, or the injuries he suffered due to the force being used.

Even if the plaintiff had alleged plausible due process and excessive force claims, the court must dismiss this action because it is obvious from the face of the complaint that the two-year limitations period applicable to section 1983 claims brought in Pennsylvania expired well prior to the plaintiff filing this action. Accordingly, the court must dismiss the complaint with prejudice.

## I.    ALLEGATIONS AND PROCEDURAL HISTORY

The *pro se* plaintiff, Erik J. Gumminger ("Gumminger"), commenced this action by filing an application for leave to proceed *in forma pauperis* ("IFP Application"), complaint, and prisoner trust fund account statement, which the clerk of court docketed on December 9, 2022.[1] *See* Doc. Nos. 1–3. In the complaint, Gumminger names as defendants the Pennsylvania Board of Probation and Parole (the "Board") and "C/O Kellom," whom Gumminger alleges works for the Pennsylvania Department of Corrections. *See* Compl. at ECF pp. 1, 2. Gumminger indicates that he is suing C/O Kellom only in his individual capacity. *See id.* at ECF p. 2.

Gumminger alleges that the Board failed to "recalculate" his sentence after the Commonwealth of Pennsylvania, on June 22, 2015, *nolle prossed* his criminal case in the Court of Common Pleas of Philadelphia County, *Commonwealth v. Gumminger*, No. CP-51-CR-7842-2011 (Philadelphia Cnty. Ct. Com. Pl.).[2] *See* Compl. at ECF p. 4. Despite the Commonwealth *nolle prossing* this other criminal case, Gumminger asserts that the Board determined that he had

---

[1] Gumminger is currently incarcerated at the George W. Hill Correctional Facility in Philadelphia. *See* Compl. at ECF p. 2, Doc. No. 2.

[2] Although Gumminger specifically identifies this docket number in the complaint, a search of the publicly available docket entries (https://ujsportal.pacourts.us), revealed that this docket entry belongs to another case, *Commonwealth v. Dwayne Smith*, No. CP-51-CR-7842-2011 (Philadelphia Cnty. Ct. Com. Pl.), *available at*: https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-51-CR-0007842-2011&dnh=VYV%2FPGlTuE4lncReGpn0Ng%3D%3D. The court attempted to find the case to which Gumminger was referencing, but it very likely was expunged from the system because of the *nolle prosequi*.

violated the terms of his parole and "gave [him an] 18 month violation in 2016." *Id.* Because the Board sentenced him on the parole violation, he was "on DOC grounds" at SCI-Retreat when C/O Kellom attacked him from behind in December 2018. *Id.* at ECF pp. 4–5. Gumminger alleges that he "was paroled and ready to go home," when the attack occurred, but then he was placed in a segregated housing unit ("SHU") for 90 days even though he was the victim of the attack.[3] *See id.* at ECF p. 5.

Due to C/O Kellom's attack and the Board unjustifiably determining that he had committed a violation, Gumminger claims that he suffers from post-traumatic stress disorder, depression, and anxiety. *See id.* For relief, Gumminger seeks $7 million in compensatory and punitive damages, and he appears to be seeing injunctive relief in the nature of the court terminating his probation/parole. *See id.*

## II.   DISCUSSION

### A.   The IFP Application

Regarding applications to proceed *in forma pauperis*,

> any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. *Deutsch*[ *v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in [sic] *forma pauperis* by filing in good faith an affidavit stating, among other things,

---

[3] While unclear, Gumminger appears to claim that he was transferred from SCI-Retreat to SCI-Dallas to serve the 90 days in the SHU. *See* Compl. at ECF p. 5.

that he is unable to pay the costs of the lawsuit. *Neitzke,* 490 U.S. at 324, 109 S.Ct. 1827.

*Douris v. Middletown Twp.*, 293 F. App'x 130, 131–32 (3d Cir. 2008) (per curiam) (footnote omitted).

The litigant seeking to proceed *in forma pauperis* must establish that the litigant is unable to pay the costs of suit. *See Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989) ("Section 1915 provides that, in order for a court to grant *in forma pauperis* status, the litigant seeking such status must establish that he is unable to pay the costs of his suit."). "In this Circuit, leave to proceed *in forma pauperis* is based on a showing of indigence. [The court must] review the affiant's financial statement, and, if convinced that he or she is unable to pay the court costs and filing fees, the court will grant leave to proceed *in forma pauperis*." *Deutsch*, 67 F.3d at 1084 n.5 (internal citations omitted).

Here, after reviewing the IFP Application, it appears that Gumminger is unable to pay the costs of suit. Therefore, the court will grant him leave to proceed *in forma pauperis*.[4]

**B.     Standard of Review – Screening of Complaint Under 28 U.S.C. § 1915**

Because the court has granted Gumminger leave to proceed *in forma pauperis*, the court must engage in the second part of the two-part analysis and examine whether the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or asserts a claim against a defendant immune from monetary relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . **(B)** the action or appeal—**(i)** is frivolous or malicious; **(ii)** fails to state a claim on which relief may be granted; or

---

[4] As Gumminger is an incarcerated individual, he must fully pay the filing fee in installments due to the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

(iii) seeks monetary relief against a defendant who is immune from such relief"). A complaint is frivolous under section 1915(e)(2)(B)(i) if it "lacks an arguable basis either in law or fact," *Neitzke*, 490 U.S. at 325, and is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch*, 67 F.3d at 1085. As for whether a complaint is malicious,

> [a] court that considers whether an action is malicious must, in accordance with the definition of the term "malicious," engage in a subjective inquiry into the litigant's motivations at the time of the filing of the lawsuit to determine whether the action is an attempt to vex, injure or harass the defendant.

*Id.* at 1086. "[A] district court may dismiss a complaint as malicious if it is plainly abusive of the judicial process or merely repeats pending or previously litigated claims." *Brodzki v. CBS Sports*, Civ. No. 11-841, 2012 WL 125281, at *1 (D. Del. Jan. 13, 2012).

Concerning the analysis under section 1915(e)(2)(B)(ii), the standard for dismissing a complaint for failure to state a claim pursuant to this subsection is identical to the legal standard used when ruling on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under section 1915(e)(2)(B)). Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556 (citation omitted).

In addressing whether a *pro se* plaintiff's complaint fails to state a claim, the court must liberally construe the allegations set forth in the complaint. *See Higgs v. Attorney Gen.*, 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)). While the court must liberally construe *pro se* pleadings, "liberal construction of a pro

se amended complaint does not mean accumulating allegations from superseded pleadings." *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019) (per curiam). "Therefore, as a practical matter, the filing of amended and supplemental complaints effectively constitutes an abandonment of any prior complaints filed by a plaintiff." *Smith v. Price*, Civ. No. 3:11-CV-1581, 2012 WL 1068159, at *4 (M.D. Pa. Mar. 5, 2012), *report and recommendation adopted*, Civ. No. 11-1581, 2012 WL 1072282 (M.D. Pa. Mar. 29, 2012).

Additionally, the court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Peele v. McLaughlin*, 641 F. App'x 111, 112 (3d Cir. 2016) (per curiam) (explaining that even though "the statute of limitations is an affirmative defense [under Rule 8(c) of the Federal Rules of Civil Procedure], a district court may sua sponte dismiss a complaint under § 1915(e) where the defense is obvious from the complaint and no development of the factual record is required"); *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) ("A complaint may be dismissed *sua sponte* under § 1915 based on an affirmative defense—such as statute of limitations—only when the defense is obvious from the face of the complaint and no further factual record is required to be developed." (citation and internal quotation marks omitted)); *cf. Ball v. Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013) (explaining that if affirmative defense appears on face of complaint, court can dismiss complaint under Rule 12(b)(6)), *abrogated on other grounds by Coleman v. Tollefson*, 575 U.S. 532 (2015).

## C. Analysis

Gumminger asserts that the Board's actions in determining that he had violated the terms of his parole and recommitting him for 18 months, even though the Commonwealth had *nolle prossed* his underlying criminal charge, violated his due process rights. *See* Compl. at ECF pp. 3,

4. Gumminger also claims that C/O Kellom used excessive force when he attacked him while they were at SCI-Retreat in December 2018. The court will analyze each claim below.[5]

### 1.     Violation of Due Process Claim Against the Board

Gumminger is raising his constitutional claims via 42 U.S.C. § 1983. *See* Compl. at ECF p. 3. This statute provides in pertinent part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. When attempting to establish a claim under section 1983, a plaintiff must allege and prove that a "person" deprived the plaintiff of a constitutional right while acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 49 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

Here, Gumminger claims that the Board violated his due process rights under the Fourteenth Amendment to the United States Constitution by detaining him for 18 months for violating the conditions of his parole even though the underlying violation was based on charges which were ultimately *nolle prossed*. Pursuant to the Fourteenth Amendment, "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend.

---

[5] Although Gumminger has referenced being placed in the SHU, the court has not interpreted the complaint as containing a separate claim about his disciplinary segregation since he does not allege that the procedures by which he was placed there violated his rights, and he does not name as a defendant someone who was personally responsible for violating his rights. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995) ("Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law."); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.").

XIV, § 1. Due process protections extend to both substantive and procedural violations of the Fourteenth Amendment. *See Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833, 846–87 (1992) ("[I]t is settled that the due process clause of the Fourteenth Amendment applies to matters of substantive law as well as to matters of procedure." (citation and internal quotation marks omitted)). "[T]he substantive component of the Clause . . . protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Whereas the procedural component "provide[s] a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a State." *Id.*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Generally, "the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Id.* (citations omitted). "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) [the plaintiff] was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to [the plaintiff] did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). When a party has access to full judicial process "the state has provided adequate procedural due process." *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 597 (3d Cir. 1995), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392 (3d Cir. 2003).

Regarding a claimed individual liberty interest, it can be derived directly from the Due Process Clause or from a state's statutory scheme. *See Asquith v. Dep't of Corr.*, 186 F.3d 407, 409 (3d Cir. 1999) ("A protected liberty interest may arise from only one of two sources: the Due Process Clause or the laws of a state." (citation omitted)). A parolee has a Fourteenth Amendment protected liberty interest in parole, which the state cannot revoke without appropriate process.[6] *See Morrissey v. Brewer*, 408 U.S. 471, 481–82 (1972) (describing "the nature of the interest of the parolee in [the parolee's] continued liberty" while on parole and concluding that "[b]y whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment");[7] *Aki v. U.S. Parole Comm'n*, Civ. No. 1:11-CV-1730, 2012 WL 3062234, at *5

---

[6] Contrary to parole revocations, an individual does not have a protected liberty interest in being paroled that could form the basis of a procedural due process claim. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("[P]arole *release* and parole revocation are quite different. There is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires."). In this regard, the Constitution does not establish a liberty interest in parole that invokes due process protections. *See id.* ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right: '[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty.'" (quoting *Meachum v. Fano*, 427 U.S. 215, 224 (1976))). In addition, statutes governing Pennsylvania's Board of Probation and Parole do not grant state prisoners any constitutionally protected liberty interest in being released on parole prior to the expiration of their controlling maximum sentences. *See Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996) (explaining that Pennsylvania Commonwealth Court decisions have correctly recognized "that no liberty interest is created by the expectation of parole" (citing *Greenholtz*, 442 U.S. at 11)); *Coady v. Vaughn*, 770 A.2d 287, 289 (Pa. 2001) ("It is undisputed that appellee does not have a clear legal right to the grant of parole, nor does the board have a corresponding duty to grant the same."). The only potential due process claims incarcerated individuals could have relative to the granting or denying of parole is a substantive due process claim if the plaintiff can show that the decision was arbitrary and capricious. *See Coady v. Vaughn*, 251 F.3d 480, 487 (3d Cir. 2001) (addressing substantive due process claim in habeas petition claiming that Board improperly denied petitioner's application for parole); *Disabatino v. Pa. Bd. of Probation & Parole*, Civ. A. No. 05-5662, 2006 WL 1308236, at *1 (E.D. Pa. May 10, 2006) (rejecting objections to report recommending denial of habeas petition and explaining that "[a]lthough there is no protected liberty interest in being granted parole, a decision by a parole board cannot be arbitrary and capricious or based on constitutionally impermissible reasons, such as race, religion or the exercise of free speech rights." (citing *Block v. Potter*, 631 F.2d 233, 235–37 (3d Cir. 1980))).

[7] The *Morrissey* Court explained:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. He may have been on parole for a number of years

(M.D. Pa. July 26, 2022) ("In *Morrissey*, the Supreme Court held that a parolee has a liberty interest in parole which is protected by the Fourteenth Amendment and cannot be revoked without due process safeguards." (quoting 408 U.S. at 482)).

Here, even though he had a protected liberty interest in parole, Gumminger's procedural due process claim fails because he has not alleged that the procedures available to him to challenge the Board's decision did not provide him with due process.[8] *See* Compl. at ECF pp. 1–10; *Hill*, 455 F.3d at 234 (explaining that plaintiff pursuing procedural due process claim must allege that available procedures did not provide due process); *see also Mader v. Union Twp.*, No. 22-1425, 2022 WL 17546953, at *2 (3d Cir. Dec. 9, 2022) ("To the extent that the Maders have alleged a procedural-due-process claim, they have failed to show that the procedures available to them— which included both an opportunity to make their case in person to the Township and then, if necessary, to seek relief in state court—was constitutionally inadequate." (citations omitted)); *Willard v. Pa. Soc. for the Prevention of Cruelty to Animals*, 525 F. App'x 217, 221 (3d Cir. 2013) (affirming dismissal of complaint where plaintiff failed to allege that, *inter alia*, available procedures were inadequate). In addition, it does not appear that Gumminger alleges that he availed

---

and may be living a relatively normal life at the time he is faced with revocation. The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions. In many cases, the parolee faces lengthy incarceration if his parole is revoked.

We see, therefore, that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a 'right' or a 'privilege.' By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.

408 U.S. at 482.

[8] "[P]arole revocation determinations must be based on two core decisions: 'whether the parolee in fact acted in violation of one or more conditions of parole and whether the parolee should be recommitted either for his or society's benefit.'" *McCullough v. Wetzel*, Civ. A. No. 21-cv-91-JDW, 2022 WL 3006216, at *5 (E.D. Pa. Apr. 26, 2022) (quoting *Greenholtz*, 442 U.S. at 9).

himself of the processes available to him upon the revocation of his parole.[9] *See Alvin*, 227 F.3d at 116 ("A due process violation is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." (citation and internal quotation marks omitted)); *see also Frompovicz v. Hissner*, 434 F. Supp. 3d 269, 279 (E.D. Pa. 2020) (concluding defendants were entitled to summary judgment on plaintiff's procedural due process claim because plaintiff failed to avail himself of process available to him). Accordingly, Gumminger has failed to plead a plausible procedural due process claim, and the court will dismiss it under 28 U.S.C. § 1915(e)(2)(B).[10]

---

[9] Gumminger alleges that he filed a grievance relating to the revocation of his parole, and he claims that he completed the grievance process, including writing to "Harrisburg." Compl. at ECF pp. 6–7. To the extent that these allegations could possibly cover his pursuit of the procedures available to him when appealing from the Board's decision, *see* 61 Pa. C.S. § 6113(d) (providing that procedure to challenge action by Board to recommit individual as parole violator is to file an administrative appeal within 30 days of the Board's recommitment order); 61 Pa. C.S. § 763(a) (providing that individual may appeal denial of administrative relief by filing petition for review with Commonwealth Court of Pennsylvania), Gumminger still would not have pleaded a plausible procedural due process claim because he would have received the process entitled to him. *See Hammie v. Castor*, Civ. A. No. 93-5304, 1995 WL 61126, at *4 (E.D. Pa. Feb. 10, 1995) (concluding defendants were entitled to summary judgment on procedural due process claim because, *inter alia*, plaintiff "received all the process due a parolee who is accused of committing a parole violation"); *Martin v. Danko*, Civ. A. No. 93-3742, 1994 WL 242531, at *4 (E.D. Pa. May 27, 1994) (same); *see also Gotell v. Clarke*, No. 1:21-cv-136-SPB-RAL, 2022 WL 1768945, at *2 (W.D. Pa. June 1, 2022) ("To the extent Plaintiff asserts that her procedural due process rights were violated [when she was convicted and imprisoned for child abuse and lost her custodial rights], the claim fails because it is evident that Plaintiff received all of the process to which she was entitled.").

[10] To the extent that Gumminger is possibly asserting a substantive due process claim, he has also failed to plead a plausible claim. As indicated above, "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). To plead a plausible substantive due process claim, a plaintiff must allege conduct that is "arbitrary[] or conscious shocking." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *see also Collura v. Disciplinary Bd. of Supreme Ct. of Pa.*, Civ. A. No. 11-5637, 2013 WL 4479141, at *7 (E.D. Pa. Aug. 22, 2013) ("To state a substantive due process claim, the plaintiff must allege that he was deprived of a fundamental right, and that the government conduct at issue was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." (citations and internal quotation marks omitted)), *aff'd*, 569 F. App'x 114 (3d Cir. 2014).

Gumminger has not pleaded any facts which plausibly show that the Board's conduct was arbitrary or conscious shocking. Although Gumminger alleges that the Board recommitted him for 18 months despite the Commonwealth *nolle prossing* the charges allegedly leading to the violation and recommitment, that in itself does not establish that the Board erred in concluding that he had violated the terms of his parole. Although a *nolle prosequi* occurs when the prosecuting attorney voluntarily withdraws the charges, that does not mean that the conduct leading to the alleged violation could not be used to justify the recommitment of a parolee. *See Brantley v. Com., Pa. Bd. of Probation and Parole*, 506 A.2d 970, 973–74 (Pa. Cmwlth. 1986) (concluding that Commonwealth's *nolle prossing* of criminal charges did not warrant application of collateral estoppel in parole revocation hearing because elements to be proven by Commonwealth in convicting parolee of criminal offenses are not same as Board to prove violation

Even if Gumminger had pleaded a plausible claim for a due process violation, the court would still be compelled to dismiss it because he filed it well outside the applicable statute of limitations. All section 1983 claims are subject to the applicable state's statute of limitations for personal injury actions. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007) (concluding that statute of limitations for section 1983 actions "is governed by the personal injury tort law of the state where the cause of action arose"). Since Gumminger's claims arose in Pennsylvania, the court applies Pennsylvania's relevant limitations period, which in this case is two years. *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) (stating that "[t]he statute of limitations applicable to § 1983 claims in Pennsylvania is two years" (citation omitted)). This two-year limitations period accrues "when a plaintiff has a complete and present cause of action, that is, when [the plaintiff] can file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotation marks and citation omitted). This means that the statute of limitations generally "accrues when the plaintiff knew or should have known of the injury upon which [the] action is based." *Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

Nevertheless, in certain circumstances Pennsylvania's discovery rule may operate to delay the running of the statute of limitations. *See Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018) ("[T]he discovery rule tolls the statute of limitations where the plaintiff is reasonably unaware that he has been injured and that his injury has been caused by another party's conduct."). In other words,

> [w]here the plaintiff's injury or its cause was neither known nor reasonably ascertainable, [Pennsylvania's] discovery rule tolls the statute of limitations.... The statute of limitations accordingly begins to run when the plaintiff knew or, exercising reasonable diligence, should have known (1) he or she was injured and

---

insofar as parolee's acts must violate one of conditions of parole); *see also Hale v. Fla. Parole Comm'n*, No. 5:11cv265/MMP/EMT, 2012 WL 6213458, at *11 (N.D. Fla. Nov. 1, 2012) (concluding that "fact that criminal charge was nolle prossed does not change th[e] conclusion" that "there was competent, substantial evidence to support the revocation" (citations omitted)).

> (2) that the injury was caused by another. That reasonable diligence standard is an objective one, but at the same time sufficiently flexible to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question.

*Adams v. Zimmer*, 943 F.3d 159, 163–64 (3d Cir. 2019) (internal quotation marks and citations omitted). Whether or not Pennsylvania's discovery rule applies in a case is a question of fact that the factfinder must resolve, *see id.* ("[T]he question '[w]hether [a plaintiff] should have acted with greater diligence to investigate' or otherwise should have known of her injury earlier 'can only be seen as an issue of fact.'" (quoting *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011))), unless "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of [the party's] injury and its cause[,]" which would allow the court to determine that "the discovery rule does not apply as a matter of law." *Fine v. Checcio*, 870 A.2d 850, 858–59 (Pa. 2005) (citation omitted).

In this case, reasonable minds would not differ in finding that Gumminger knew or should have known upon the exercise of reasonable diligence the injury he suffered when the Board determined that he had violated the terms of his parole and recommitted him in 2016. Although it is unclear when the Board recommitted him for 18 months in 2016, Gumminger would have had until no later than 2019 to file the instant action. Since it is obvious from the face of the complaint that this cause of action accrued at some point and 2016, and he did not file this action until December 2022, the statute of limitations bars his due process claim. Accordingly, the court will dismiss the due process claim against the Board with prejudice.

## 2.    Excessive Force Claim against C/O Kellom

Gumminger appears to assert an excessive force claim against C/O Kellom based on the "attack" in 2018. *See* Compl. at ECF pp. 4, 5. The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards

of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992) ("The objective component of an Eighth Amendment claim is therefore contextual and responsive to 'contemporary standards of decency.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976))). When screening an Eighth Amendment excessive force claim under section 1915, the court asks whether the prisoner has plausibly alleged that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." *Jackson v. Bueno*, Civ. A. No. 20-687, 2020 WL 2847925, at *3 (E.D. Pa. June 2, 2020) (quoting *Hudson*, 503 U.S. at 7)). Further,

> [t]he factors used to determine whether the force applied was excessive include: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Although the extent of an inmate's injuries is relevant to an Eighth Amendment analysis, "there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force." *Id.* at 104. Thus, the inquiry must be driven by the extent of the force and the circumstances in which it is applied, not by the resulting injuries. *Id.* at 108; *see also Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002). The Eighth Amendment does not protect against a de minimis use of physical force, so long as it is not of a sort "repugnant to the conscience of mankind." *Brooks*, 204 F.3d at 107 (quoting *Hudson*, 503 U.S. at 9-10).

*Jackson*, 2020 WL 2847925, at *3.

From a factual allegation standpoint, Gumminger's allegation that C/O Kellom attacked him from behind is insufficient to state a plausible excessive force claim because he has not "allege[d] facts describing the force used, the circumstances under which it was used, and the injuries he suffered as a result." *Davis v. Chester Crozer Hosp.*, Civ. A. No. 21-CV-5035, 2021 WL 5937727, at *5 (E.D. Pa. Dec. 15, 2021). Although the court ordinarily would permit

14

Gumminger leave to file an amended complaint so he could potentially add these facts,[11] the court will not do so here because this excessive force claim suffers from the same failure as his due process claim insofar as the statute of limitations bars this claim. *See Cowell v. Palmer Twp.*, 263 F.3d 286, 296 (3d Cir. 2001) (explaining that amendment of complaint is futile if statute of limitations would bar claim). This excessive force claim is also subject to a two-year statute of limitations. *See Walters v. Muhlenberg Twp. Police Dep't*, 536 F. App'x 213, 216 (3d Cir. 2013) (per curiam) (explaining that two-year limitations period applied to excessive force claim). Gumminger alleges that the "attack" occurred in 2018, so he would have known at that time that C/O Kellom injured him and that he had a possible claim. As he filed the complaint here in December 2022, it is obvious from the face of the complaint that this action is well outside the two-year limitations period. Accordingly, the court must also dismiss this excessive force claim with prejudice.

### III.   CONCLUSION

For the reasons discussed above, the court will grant the IFP Application. The court must also dismiss the complaint because Gumminger has failed to allege a plausible claim for a due process violation against the Board or an excessive force claim against C/O Kellom. More importantly, it is obvious from the face of the complaint that Gumminger failed to file these section 1983 claims within the applicable two-year limitations period. Due to this failure, the court must dismiss the complaint with prejudice because any amendment would be futile.

---

[11] A district court should generally provide a *pro se* plaintiff with leave to amend unless amending would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule). Also, "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007).

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.